IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. No. 09-009-SLR |
| ) | |
| JEROME BROOMER, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

**I. INTRODUCTION**

On January 27, 2009, a federal grand jury indicted defendant Jerome Broomer for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (D.I. 10) Defendant moves for suppression of evidence, arguing there was neither probable cause nor reasonable suspicion upon which to stop him, and that any statements made to police Officers were taken in violation of his Fifth Amendment rights. (D.I. 12) An evidentiary hearing was conducted on July 28, 2009.[1] (D.I. 28) The matter is fully briefed. (D.I. 24, 25, 26, 27) The court has jurisdiction pursuant to 18 U.S.C. § 3231.

**II. FINDINGS OF FACTS**

---

[1]Testifying on behalf of plaintiff were Wilmington Police Department ("WPD") Officer Michael Rinehart ("Rinehart") and testifying on behalf of defendant was Enoch Moore ("Moore").

Pursuant to Federal Rules of Criminal Procedure 12(d), the following constitutes the court's essential findings of fact.

1. On December 31, 2008, at approximately 3:00 a.m., WPD Officer Rinehart[2] and WPD Officer Paul DiMarco ("DiMarco"), collectively ("the Officers") were dispatched to a burglary-in-progress at Apartment 2L, 225 West Fourth Street, an apartment complex ("complex") in Wilmington, Delaware.[3] (*Id.* at 4-6, 14; D.I. 24 at 2; DX5) The Officers were in full uniform and riding in a marked police vehicle, driven by DiMarco. The Officers were informed, via police dispatch, that a woman had called 911 ("911 caller") to report that her boyfriend was trying to break into her apartment. (D.I. 28 at 5; DX5) Earlier in the evening, there had been a domestic incident at the same apartment. (D.I. 28 at 5)

2. As DiMarco pulled the patrol vehicle up to the front of the complex, he observed defendant walking, on the opposite side of the street. (*Id.* at 4, 6, 16) Rinehart, looking toward the staircases, did not immediately observe defendant. (*Id.* at 7) Rinehart did not see anyone in the staircase or the surrounding area of the complex. (*Id.* at 6-7, 15-16) Although Rinehart heard DiMarco call out to defendant, he could not decipher what either said. (*Id.* at 7, 17) By this point, DiMarco had pulled the patrol vehicle alongside defendant. Rinehart heard DiMarco ask defendant if he could speak with him for a second. (*Id.* at 7) Defendant did not respond.

---

[2]As a patrol officer, his duties included responding to complaints in the City of Wilmington, Delaware. (*Id.* at 3-4)

[3]The complex, four stories tall, encompasses the entire 400 block of Tatnall Street and has three separate open-air stairway entrances that provide access to the individual apartments. (*Id.* at 6)

3. DiMarco stopped the patrol vehicle; both Officers exited, with Rinehart's attention focused on the complex. (*Id.* at 7-8) Rinehart looked over to DiMarco and saw DiMarco chasing defendant northbound on Tatnall. (*Id.* at 8) Rinehart joined the chase and notified dispatch. The Officers issued verbal commands to stop and get on the ground. Defendant did not comply.

4. After about a half-block of pursuit, the chase stopped when the Officers simultaneously deployed their tasers,[4] causing defendant to fall to the ground. (*Id.* at 8) As defendant collapsed, a chrome and white .22 caliber firearm slid from his mid-waist area. (*Id.* at 9, 18) DiMarco placed defendant under arrest and Rinehart secured the firearm. Rinehart then went into the complex, interviewed the 911 caller and learned that defendant was not involved in the attempted burglary of her apartment. (*Id.* at 10, 18) The burglary suspect was still, at-large, in the complex. (*Id.* at 18)

5. Just before 3:00 a.m., Enoch Moore[5] was standing on the sidewalk in front of the complex, awaiting the arrival of a female friend, Tiffany. (*Id.* at 21-22) The area around Moore was clearly illuminated by several lights. (*Id.* at 33) He observed defendant, on the opposite side of the street, walk from Fourth Street onto Tatnall Street. (*Id.* at 22-23, 31, 33-34) The two men acknowledged each other. (*Id.* at 20, 23)

---

[4]Rinehart explained that tasers are used to reduce risk of injury to an officer and a suspect. (*Id.* at 9) Whenever a taser is deployed, a supervisor is called to the scene to investigate. (*Id.* at 10)

[5]Moore testified that he has known defendant, a schoolmate, since eighth or ninth grade. (*Id.* at 20, 34) Over the years, Moore would bump into defendant about twice a month. (*Id.* at 35)

3

    6. Moore then observed a police vehicle arrive and pull slowly alongside defendant. (*Id.* at 23, 26, 36) Moore saw a verbal exchange between the Officers and defendant, but could not decipher the exchange. (*Id.* at 23; DX2) Moore watched the patrol vehicle continue, slowly, pacing alongside defendant. As defendant started to turn the corner, Moore saw the Officers exit the patrol vehicle and run after defendant. (*Id.* at 27-28, 37) At no time did Moore observe defendant run or change his speed. (*Id.* at 27-28) A few seconds later, Moore was distracted by a scream and turned around to see a couple arguing on a balcony of the complex. (*Id.* at 28-29)

    7. Following his arrest, defendant was transported to police headquarters. (*Id.* at 10) Rinehart reviewed with defendant the questions on a Wilmington Police Department Miranda warning form. (*Id.* at 11; GX1) Defendant answered "yes" to the questions, stated he understood his rights, signed the form, and agreed to speak with Rinehart. (*Id.* at 11-12) Defendant then gave an incriminating statement.

## III. STANDARD OF REVIEW

    1. Once a defendant has challenged the legality of a warrantless search and seizure, the burden is on the government to demonstrate that the acts were constitutional. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). The burden of proof is a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 178 n. 14 (1974).

    2. The court is charged with reviewing the "credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and

conclusions to be drawn from the evidence." *United States v. McKneely*, 6 F.3d 1447, 1453 (10th Cir. 1993); *United States v. Williams*, 400 F. Supp. 2d 673 (D. Del. 2005).

## IV. DISCUSSION

### A. The Stop

3. The Fourth Amendment of the United States Constitution prevents "unreasonable searches and seizures." A seizure made pursuant to a warrant based on probable cause is generally reasonable. *Katz v. United States*, 389 U.S. 347, 356-357 (1967). Warrantless searches are presumed unreasonable. *Id.*

4. A police officer may conduct a brief, investigatory stop whenever he has a reasonable articulable suspicion that criminal activity is afoot. *Terry v. Ohio,* 392 U.S. 1, 30 (1968); *Illinois v. Wardlow* 528 U.S. 119, 123 (2000); *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000). "Reasonable, articulable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, and only a minimal level of objective justification is necessary for a *Terry* stop." *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006).

5. To determine whether a stop was justified, the totality of the circumstances surrounding the stop must be evaluated. *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004); *United States v. Sokolow*, 490 U.S. 1, 8 (1989). The court "must view the circumstances surrounding the stop in their entirety, giving due weight to the experience of the officers." *United States v. Rickus*, 737 F.2d 360, 365 (3d Cir. 1984). Deference is accorded to an "officer's judgment of whether criminal activity is taking

place with an understanding that 'whether an officer has reasonable suspicion to warrant a stop . . . is often an imprecise judgment.'" *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006). The court should defer to the officer's observations and judgments in reviewing the totality of the circumstances because officers "draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

      6. The court finds Rinehart's manner and demeanor during testimony credible.[6] Rinehart's testimony establishes that he and DiMarco responded to the complex in the early morning, believing a burglary was underway. Upon arrival, Rinehart observed no one in the area, while his partner observed defendant across the street from the complex. Significantly, defendant was observed near in time and geographic proximity to the location of the burglary-in-progress. *United States v. Goodrich*, 450 F.3d 552, 562 (3d Cir. 2006) (geographic and temporal proximity of the suspect to the crime scene is an important factor to consider in determining validity of a stop). Moreover, when DiMarco tried to speak with defendant, defendant was unresponsive and ran; a chase ensued. Accordingly, based on the totality of the circumstances, the court concludes that the Officers had reasonable suspicion to stop defendant regarding the burglary-in-progress.

---

[6]In so doing, the court does not find that Moore's testimony was not credible. Rather, considering that Rinehart's proximity to defendant was closer than Moore's, his observations are more compelling.

6

### B. The Statements

7. The Fifth Amendment of the United States Constitution guarantees that, in a criminal proceeding, no person will be forced to be a witness against himself. To this end, the United States Supreme Court created the *Miranda* warnings for law enforcement to follow prior to custodial interrogation of a suspect. *Miranda v. Arizona*, 384 U.S. 436 (1966). Specifically, before any questioning, the suspect must be informed that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* at 445. These "warnings are constitutionally required to combat the compelling pressures inherent in custodial police interrogation and to permit a full opportunity to exercise the privilege against self-incrimination" guaranteed by the Fifth Amendment. *Dickerson v. United States*, 530 U.S. 428, 440 (2000). Statements obtained in violation of Miranda precepts, even though the statements may be voluntary, are inadmissible to prove guilt at trial. *See Michigan v. Mosely*, 423 U.S. 96, 100 (1975); *Miranda,* at 458-59.

8. It is the government's burden to prove, by a preponderance of the evidence, that a defendant was properly advised of his *Miranda* rights; that the defendant voluntarily, knowingly, and intelligently waived said rights; and that the ensuing statement was voluntarily made. *United States v. Durham*, 741 F.Supp. 498, 504 (D. Del.1990). *See Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986). Two factors must be considered to determine whether a waiver was voluntary, knowing and intelligent:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and

7

> deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986).

9. The totality of the circumstances surrounding the questioning must be examined to determine the sufficiency of *Miranda* warnings and any waiver of rights. *See United States v. Velasquez*, 885 F.2d 1076, 1086 (3d Cir. 1989); *North Carolina v. Butler*, 441 U.S. 369 (1979). In analyzing the totality of the circumstances, a court "must look at the facts of the particular case, including the background, experiences, and conduct of the suspect." *Velasquez*, 885 F.2d at 1086. Potential circumstances affecting the voluntariness of the statements include: 1) evidence of police coercion; 2) the length and location of the interrogation; 3) the defendant's maturity, physical condition, mental health and level of education; 4) whether *Miranda* warnings were given; and 5) whether an attorney was present for the interview. *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994); *Connelly*, 479 U.S. at 164 (a confession is involuntary if is the product of overreaching police conduct).

10. Considering the totality of the uncontradicted record at bar, the court finds that Rinehart properly administered *Miranda* warnings to defendant and that defendant made a voluntary, knowing, and intelligent waiver of his *Miranda* rights as evidenced by the signed form. There is nothing of record to contradict this conclusion, accordingly, suppression of the statement is unwarranted.

**CONCLUSION**

At Wilmington this 9th day of October, 2009,

IT IS ORDERED that:

1. Defendant's motion to suppress evidence and statements is denied (D.I. 12).

2. A telephonic status conference is scheduled for **Wednesday, October 21, 2009** at **8:30 a.m.**, with the court initiating said call.

3. The time between this order and the teleconference shall be excluded under the Speedy Trial Act in the interest of justice. 18 U.S.C. § 3161(h)(8)(A).

                                                                                                 United States District Judge